1
2
3
4
5
6
7
8    **UNITED STATES DISTRICT COURT**
9    **CENTRAL DISTRICT OF CALIFORNIA**
10
11
12   ROSARIO ADOLFO REYES          No. 8:23-cv-01633-MWF-AJR
     JUAREGUI,
13                                  **ORDER DISMISSING**
                 Plaintiff,         **COMPLAINT WITH LEAVE TO**
14        v.                        **AMEND**
15   DEPARTMENT OF HOMELAND
     SECURITY, et al.,
16
                 Defendants.
17
18
19                              **I.**
20                        **INTRODUCTION**

          On August 31, 2023, Rosario Adolfo Reyes Juaregui ("Plaintiff"), a
21
     California resident proceeding *pro se*, filed a "Civil Rights Complaint For
22
     Damages" pursuant to 42 U.S.C § 1983 ("Complaint").[1]  (Dkt. 1 at 1.)  The
23
     Complaint names as Defendants:  (1) Department of Homeland Security ("DHS");
24
     (2) Federal Bureau of Investigation ("FBI"); (3) Huntington Beach Police
25
26
27        [1]  Because the Complaint and attachments thereto do not bear consecutive page
     numbers, the Court uses the CM/ECF pagination.
28

Department ("HBPD"); (4) David Hoang; and (5) Does 1 to 6[2] (collectively "Defendants").  (Id. at 2-3.)  Plaintiff sues DHS, FBI, and HBPD in their official capacities only and David Hoang and Does 1 to 6 in their individual and official capacities.  (Id.)

On October 10, 2023, Plaintiff filed a Motion for Preliminary Injunction against Defendants while this action is pending, which was denied by Judge Fitzgerald on October 19, 2023.  (Dkts. 9-10.)

## II.

## PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT

The Complaint is 133 pages long, including 32 typewritten pages of factual allegations and 101 pages of exhibits.  Because there does not appear to be any unifying thread or discernable organization to Plaintiff's often nonsensical allegations, it is impossible to prepare a coherent summary of the entirety of the Complaint's claims.  Under the most generous interpretation of the Complaint, Plaintiff appears to allege in a stream-of-consciousness that Defendants -- including federal and local governmental entities and unnamed employees, property owners and managers, all acting under the direction of these entities -- are engaged in a vast conspiracy to surveil, target and harm Plaintiff and his immediate family.  From what the Court can ascertain from Plaintiff's rambling claims, Plaintiff alleges that "law enforcement and apparent Federal agencies in charge" have been targeting Plaintiff and his immediate family "for unknown reasons in past years."  (Id. at 4, ¶¶ 2, 12.)  Since May 2021, Plaintiff alleges that Defendants have committed the

---

[2] The Court's thorough review of the Complaint shows that Plaintiff named only Does 1 to 4 as follow:  Doe 1 is an "undercover agent" (Dkt. 1 at 7, ¶ 19(b); 15, ¶ 35); Doe 2 and Doe 3 are "law enforcement investigators (Id. at 8, ¶ 23, 10, ¶ 28) and Doe 4 is Plaintiff's roommate Stephen (Id. at 8, ¶ 23; 17, ¶ 38; 23, ¶ 61(b); 24, ¶ 61(c)).

2

following on Plaintiff:  harassment, threats on his life through "words and actions," breaking into his residence and vehicles on a nightly basis, vandalizing his vehicles, damaging his property, "planting foreign substances and human hairs in his food," and "spraying unknown, toxic, and possibly cancerous aerosol sprays, including 'knock-out' sprays" and "[b]iowaste" onto his clothes, bed, and vehicles manually, and through air vents and airways at his residences and vehicles.  (Id. at 4, ¶¶ 3, 5.) Plaintiff alleges that these toxins and foreign substances have been making Plaintiff "sick with various ailments, for which he has sought medical treatment."  (Id.) Plaintiff further alleges that "he may have been framed for some unknown" crime(s) by Defendants."  (Id. at 4, ¶ 4.)  Plaintiff alleges that he has filed numerous police and incident reports in several southern California counties, including Huntington Beach.  (Id. at 5, ¶ 8.)  Plaintiff has also contacted the FBI-Los Angeles office but was advised "to call [the] police, oddly enough."  (Id. at 5, ¶ 9.)  Plaintiff filed a civil rights complaint with the United States Department of Justice.  (Id. at 5, ¶ 10.) Plaintiff alleges that despite all these reports to the various authorities, Defendants have "intensified their reckless, outrageous [and] unconstitutional" conduct against Plaintiff and his family.  (Id. at 5, ¶ 11.)

Petitioner alleges four grounds for relief, in violation of his Fourth, Fifth, Eighth, and Fourteen Amendment rights:  (1) harassment; (2) intentional infliction of emotional distress; (3) negligence; and (4) economic loss.  (Id. at 29-32.)  As to all four claims, Plaintiff allegedly suffered numerous physical injuries, pain and suffering, loss of personal vehicles and personal property, loss of wages, loss of business opportunity, and loss of potential sales.  (Id.)

In his request for relief, Plaintiff seeks the following:  (1) a preliminary injunction to stop the break-ins, harassment, intentional infliction of emotional distress, destruction of property, and other violations of law which are outlined in the Complaint; (2) appointment of counsel; (3) compensatory damages of $200,000; (4) punitive damages of $20 million; (4) costs of suit incurred in this action; (5)

1    "possible Federal Witness Protection for Plaintiff and his immediate family"; and

2    (6) any other relief the Court may find appropriate.  (Id. at 33.)

3

4                                        **III.**

5               **STANDARD FOR DISMISSAL OF PRO SE COMPLAINT**

6               Under Federal Rule of Civil Procedure 12(b)(6), a trial court may dismiss a

7    claim sua sponte "where the claimant cannot possibly win relief."  Omar v. Sea-

8    Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987); see also Baker v. Director, U.S.

9    Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990) (per curiam) (adopting the

10   Ninth Circuit's position in Omar and noting that such a *sua sponte* dismissal "is

11   practical and fully consistent with plaintiff's rights and the efficient use of judicial

12   resources").  The Court's authority in this regard includes *sua sponte* dismissal of

13   claims against defendants who have not been served and defendants who have not

14   yet answered or appeared.  See Abagnin v. AMVAC Chemical Corp., 545 F.3d 733,

15   742-43 (9th Cir. 2008); see also Reunion, Inc. v. F.A.A., 719 F. Supp. 2d 700, 701

16   n.1 (S.D. Miss. 2010) ("[T]he fact that [certain] defendants have not appeared and

17   filed a motion to dismiss is no bar to the court's consideration of dismissal of the

18   claims against them for failure to state a claim upon which relief can be granted,

19   given that a court may dismiss any complaint *sua sponte* for failure to state a claim

20   for which relief can be granted pursuant to Rule 12(b)(6).").

21               Moreover, when a plaintiff appears *pro se* in a civil rights case, the court

22   must construe the pleadings liberally and afford the plaintiff the benefit of any

23   doubt.  Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 623 (9th Cir.

24   1988).  In giving liberal interpretation to a *pro se* complaint, the court may not,

25   however, supply essential elements of a claim that were not initially pled.  Pena v.

26   Gardner, 976 F.2d 469, 471-72 (9th Cir. 1992).  A court must give a *pro se* litigant

27   leave to amend the complaint unless it is "absolutely clear that the deficiencies of

28   the complaint could not be cured by amendment."  Karim-Panahi, 839 F.2d at 623

                                            4

1    (citation and internal quotation omitted).

2         For the reasons discussed below, the Court DISMISSES the Complaint with

3    leave to amend.

4

5                                        **IV.**

6                                   **DISCUSSION**

7

8    **A.     The Complaint Violates Federal Rule of Civil Procedure 8.**

9         Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a

10   short and plain statement of the claim showing that the pleader is entitled to relief,'

11   in order to 'give the defendant fair notice of what the . . . claim is and the grounds

12   upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

13   Rule 8(e)(1) instructs that "[e]ach averment of a pleading shall be simple, concise,

14   and direct." A complaint violates Rule 8 if a defendant would have difficulty

15   responding to the complaint. Cafasso, U.S. ex rel. v. General Dynamics C4

16   Systems, Inc., 637 F.3d 1047, 1059 (9th Cir. 2011).

17        Here, the Complaint does not comply with the standards of Rule 8. The

18   Complaint rambles incoherently and catalogues seemingly random injuries and

19   events that Plaintiff claims to have suffered since May 2021. The Complaint

20   includes many allegations unrelated to Plaintiff's constitutional claims, including:

21   "Vandalism of Vehicles, Destruction of Property," "Gang Stalking," "Poisoning,"

22   "Harassment of Plaintiff's Family," and "Attempting to Cause Accidents on the

23   Road." (See Dkt. 1 at 11, 19, 21-22.) Notwithstanding the fact that the lengthy

24   Complaint contains virtually no factual allegations specifically related to the FBI or

25   DHS, the Complaint fails to clearly identify the nature of each individual claim, the

26   incident giving rise to each of those claims, and the specific defendants Plaintiff

27   believes are liable for those claims. For example, Plaintiff uses the term

28   "Defendants," or "Defendants and their agents" without specifying to which

                                          5

defendants or agents he refers and makes fantastic allegations of alleged wrongdoing unsupported by specific factual allegations.  (See, e.g., Dkt. 1 at 4, ¶¶ 3-5; 5, ¶¶ 7, 11-12; 6, ¶ 18; 9, ¶¶ 25, 27; 18, ¶ 40.)

The Complaint therefore fails to provide Defendants with "fair notice" of Plaintiff's claims in a short, clear, and concise statement.  See Twombly, 550 U.S. at 555.  A complaint is subject to dismissal for failure to state a claim if "one cannot determine from the complaint who is being sued, for what relief, and on what theory."  McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996); see also Cafasso, U.S. ex rel., 637 F.3d at 1059; see, e.g., Steinley v. Health Net, Inc., 2018 WL 6985318, at *5 (C.D. Cal. Dec. 4, 2018) ("Generally, '[u]ndifferentiated pleading against multiple defendants is improper' because it fails to give each defendant notice of the specific allegations and claims that pertain to it.") (citation omitted); E.D.C. Tech., Inc. v. Seidel, 2016 WL 4549132, at *9 (N.D. Cal. Sept. 1, 2016) ("Courts consistently conclude that undifferentiated pleading against multiple defendants is improper") (citations, internal brackets and quotations omitted).

Accordingly, as presented, Plaintiff's Complaint consists of an unrelated panoply of unconnected thoughts with little or no relation to valid federal claims, all of which, as presented, are legally and/or factually patently frivolous.

**B.**     **Plaintiff's Claims Against Non-State Actors Fail.**

Defendants David Hoang and Doe 4 (roommate Stephen) appear to be non-state actors ("Non-State Actor Defendants").  (Dkt. 1 at 3; 8, ¶ 23; 9, ¶ 26; 13, ¶ 34; 17, ¶ 38(a); 23, ¶ 61(b); 24, ¶ 61(c).)  Non-state actors cannot be sued under Section 1983 unless there is significant state involvement such that the private defendants are essentially agents for the government.  See Lopez v. Dep't of Health Servs., 939 F.2d 881, 883 (9th Cir. 1991) ("Action taken by a private individual may be under color of state law where there is significant state involvement in the action." (quotation marks omitted)).

6

Here, the Complaint does not contain sufficient allegations of state involvement to state a claim under Section 1983 against the Non-State Actor Defendants.  While Plaintiff has failed to plead a Section 1983 claim against the Non-State Actor Defendants, he may be able to bring state law causes of action against these defendants in California State Court.

## C.   **Plaintiff May Not Bring Any Official Capacity Claims Seeking Damages or Any FTCA Claims Against the FBI or DHS.**

Plaintiff's official capacity claims against the FBI and DHS must be construed as claims against the United States.  See Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985).  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1993).  The United States has not waived sovereign immunity with respect to constitutional claims for damages.  Rivera v. United States, 924 F.2d 948, 951 (9th Cir. 1991); Thomas-Lazear v. Fed. Bureau of Investigation, 851 F.2d 1202, 1207 (9th Cir. 1988).  The doctrine of sovereign immunity thus bars constitutional claims for damages against the FBI and DHS.  See Hodge v.  Dalton, 107 F.3d 705, 707 (9th Cir. 1997) (doctrine of sovereign immunity extends to federal employees in their official capacities).

To the extent Plaintiff alleges that unnamed FBI agents or DHS federal employees violated his constitutional rights pursuant to the Federal Tort Claims Act ("FTCA"), these claims are also dismissed.  It is well-settled that the only proper defendant for claims brought under the FTCA is the United States, not federal employees sued in their official capacities.  Kennedy v. U.S. Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998) ("[T]he United States is the only proper party defendant in an FTCA action.").

1

**D.    Plaintiff Fails To State A Claim Against Individual Defendants.**

2

To establish a civil rights violation, a plaintiff must show either the

3

defendant's direct, personal participation in the constitutional violation, or some

4

sufficient causal connection between the defendant's conduct and the alleged

5

violation.  See Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011).

6

To the extent Plaintiff alleges that unnamed FBI agents or DHS employees

7

violated his constitutional rights, generally, courts do not favor actions against

8

"unknown" defendants.  Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir.

9

1999).  However, a plaintiff may sue unnamed defendants when the identity of the

10

alleged defendants is not known before filing the complaint.  Gillespie v. Civiletti,

11

629 F.2d 637, 642 (9th Cir. 1980).  If that is the case, a court gives the plaintiff "the

12

opportunity through discovery to identify unknown defendants, unless it is clear that

13

discovery would not uncover the identities."  Id.  A plaintiff must diligently pursue

14

discovery to learn the identity of unnamed defendants.

15

Here, however, any claims against unnamed FBI agent(s) or DHS

16

employee(s), if any, must be dismissed because the Complaint fails to state what

17

each of these defendants separately did in their individual capacity to violate

18

Plaintiff's rights.  To state a claim against more than one unnamed defendant,

19

Plaintiff must identify each Doe Defendant as "Doe No. 1, Doe No. 2," etc., in the

20

body of the Complaint and show how each defendant individually participated in the

21

alleged constitutional violations, whether or not Plaintiff knows the defendant's

22

name.  If Plaintiff wishes to pursue his claims, he must make an effort to identify the

23

FBI agent's names or the DHS employee's names.

24

25

**D.    Plaintiff Fails To State A *Monell* Claim Against the HBPD.**

26

The Court must construe Plaintiff's claims for damages for constitutional

27

violations against the HBPD as claims against the County of Orange.  See Kentucky

28

v. Graham, 473 U.S. 159, 165-66 (1985).  Plaintiff may not sue the County for

alleged constitutional violations on a theory of *respondeat superior*, which is not a theory of liability cognizable under 42 U.S.C. section 1983.  See Connick v. Thompson, 563 U.S. 51, 60 1359 (2011); Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981).  This means that the County cannot be sued simply because employees of the County violated Plaintiff's constitutional rights.  Instead, the County may be held liable only if the alleged wrongdoing was committed pursuant to a municipal policy, custom, or usage.  See Bd. of Cnty. Comm'r of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 402-04 (1997); Monell v. N.Y. Cty. Dep't of Soc. Serv., 436 U.S. 658, 691 (1978) ("Monell"); see also Horton by Horton v. Cty. of Santa Monica, 915 F.3d 592, 603-04 (9th Cir. 2019) ("[M]unicipalites may be liable under § 1983 for constitutional injuries pursuant to . . . a pervasive practice or custom.").

Here, the Complaint contains no allegation supporting a municipal liability claim under Monell.  See Ashcroft, 556 U.S. at 678 (conclusory allegations do not suffice to plead a municipal liability claim); Starr, 652 F.3d at 1216 ("allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"); see also AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (pleading standards set forth in Starr govern municipal liability claims).  Accordingly, Plaintiff fails to state a valid Monell claim against the County, and the Complaint must be dismissed, with leave to amend.

**E.** **Plaintiff Has Not Shown Compliance with the Claims Presentation Requirement of the California Government Claims Act.**

To the extent Plaintiff is asserting a state tort claim for intentional infliction of emotional distress ("IIED"), this claim is subject to the California Government Claims Act and must be dismissed on this basis.

9

In order to pursue a tort claim against a public entity or public employee under California state law, Plaintiff must establish that he has complied with the claim presentation requirements of the California Government Claims Act.  See Cal. Gov't Code §§ 945.4, 950.2; Karim-Panahi, 839 F.2d at 627.  The California Government Claims Act requires Plaintiff to submit his tort claims to the proper entity before filing or explain why Plaintiff should be excused for noncompliance.  Cal. Gov't Code §§ 945.4; State v. Super. Ct. (Bodde), 32 Cal. 4th 1234, 1239 (2004).

Here, as Plaintiff has not pled facts demonstrating his compliance or excuse for noncompliance with the California Government Claims Act, Plaintiff's IIED state tort claim must be dismissed with leave to amend.

**F.    Plaintiff Cannot Obtain Punitive Damages Against Defendants.**

Plaintiff may not recover punitive damages against a public entity such as the County sued in their official capacities.  See Cty. of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Ruvalcaba v. Cty. of Los Angeles, 167 F.3d 514, 524 (9th Cir.), cert. denied, 528 U.S. 1003 (1999).  Accordingly, this request for relief must be dismissed.

**G.    Plaintiff's Request For Appointment Of Counsel Is Denied.**

Plaintiff is advised that there is no constitutional right to appointed counsel in a civil action, including a civil rights action under section 1983.  See Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (citing Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir. 1981)).  The decision to appoint counsel is within "'the sound discretion of the trial court and is granted only in exceptional circumstances.'" Agyeman v. Corr. Corp. of America, 390 F.3d 1101, 1103 (9th Cir. 2004) (quoting Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir. 1984)).  When deciding whether exceptional circumstances exist, the court must evaluate both "'the likelihood of

1   success on the merits [and] the ability of the [plaintiff] to articulate his claims <u>pro se</u>

2   in light of the complexity of the legal issues involved.'"  <u>Palmer</u>, 560 F.3d at 970

3   (quoting  <u>Wilborn v. Escalderon</u>, 789 F.2d 1328, 1331 (9th Cir. 1986)).  Plaintiff

4   bears the burden of demonstrating the existence of "exceptional circumstances"

5   warranting the appointment of counsel.  <u>Palmer</u>, 560 F.3d at 970.

6        Here, the Court does not believe that exceptional circumstances justifying the

7   appointment of counsel exist at this time.  Accordingly, this request for relief must

8   be denied without prejudice.

9

10

11                                      **IV.**

12                                    **ORDER**

13        The Complaint is dismissed with leave to amend.  On or before **December 2,**

14   **2023**, Plaintiff shall file a First Amended Complaint ("FAC") that attempts to

15   remedy the identified defects.  If Plaintiff chooses to file a FAC, it should bear the

16   docket number assigned to this case (8:23-cv-01633-MWF-AJR), be labeled "First

17   Amended Complaint," and be complete and of itself without reference in any

18   manner to the original Complaint or any other documents (except any documents

19   that Plaintiff chooses to attach to the FAC as exhibits).  Plaintiff is encouraged to

20   state his claims in simple language and provide only a brief statement of supporting

21   facts, omitting facts that are not relevant.  <u>Should Plaintiff decide to file a FAC, he</u>

22   <u>is encouraged to utilize the form complaint attached to this Order</u>.

23        **Plaintiff is explicitly cautioned that failure to timely file a FAC, or failure**

24   **to correct the deficiencies described above, may result in a recommendation**

25   **that this action be dismissed without prejudice for failure to prosecute and/or**

26   **obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**  Plaintiff

27   is further advised that if he no longer wishes to pursue this action, he may

28   voluntarily dismiss the action by filing a Notice of Dismissal in accordance with

1  Federal Rule of Civil Procedure 41(a)(1).  <u>A form Notice of Dismissal is attached</u>
2  <u>for Plaintiff's convenience</u>.

3

4  IT IS SO ORDERED.

5

6  DATED:   11/2/23

7  _____
8  HON. A. JOEL RICHLIN
   UNITED STATES MAGISTRATE JUDGE

9

10 <u>Attachments:</u>
   CV-09, Notice of Dismissal Pursuant to Federal Rules of Civil Procedure 41(a) or (c).
11 Pro Se 1, Complaint for a Civil Case, <u>available at</u>,
12 https://www.uscourts.gov/sites/default/files/complaint_for_a_civil_case.pdf

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28